**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**



UNITED STATES OF AMERICA

v.                                          Criminal No. 3:16cr92

CHARLES E. CHURCH,

             Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Charles E. Church's MOTION TO SUPPRESS EVIDENCE ("Def. Mot."), ECF No. 17. For the reasons set forth below, the Court finds that that the warrant obtained on November 4, 2016 was invalid, and that the good-faith exception to the warrant requirement does not apply.

**BACKGROUND**

**A. Facts**

On November 3, 2015, a minor female ("MV1") reported to her family guardian that the defendant, Charles Church, a Richmond City Police Officer, had sexually assaulted her at his Richmond home sometime after 7:00 p.m. on the previous evening (Def. Mot. 1). Following this report, the family guardian contacted Richmond police, voluntarily turned over MV1's cellular telephone to them, and transported MV1 to the Pediatric Emergency Room at Virginia Commonwealth University Medical

Center, where she was examined and interviewed by a Forensic Nurse. (Hiner Aff. Attach. B ¶6). Following this examination, a physical evidence recovery kit (PERK) was delivered to Detective Steve Kendell of the Richmond Police Department. Id.

The following morning, November 4, 2015, MV1 was taken to the Child Advocacy Center (CAC) and interviewed a second time by Ms. Brianna Valentino. (Hiner Aff. Attach. B ¶2) During the CAC, MV1 told Valentino that she and her younger sibling (MV2) were in an upstairs bedroom preparing to go to sleep when Church exchanged several SMS (short message service) text messages with her. Id. at ¶2. In one message, Church queried MV1 whether MV2 was asleep. MV1 stated that, after she informed Church by text message that MV2 had fallen asleep, Church responded that he was coming upstairs. Id. MV1 told Valentino that she was led by Church into his bedroom, where upon Church undressed them both, digitally penetrated her vagina and anus, attempted to penetrate her vagina and anus with his penis, and forced her to perform oral sexual intercourse on him. Id. at ¶5. MV1 was also asked whether Church had ever sent or showed her pornographic images or videos, and MV1 stated that he had not. (Def. Mot. 2)  Based on MV1's statements to Valentino and the PERK from VCU Hospital, Richmond Police arrested Church at 1:30 PM for Forcible Sodomy of a Minor. (Hiner Aff. Attach. B ¶2, ¶8).  As part of the

arrest, Church's cellular telephone was seized by the RPD and his apartment was secured.

While MV1 was being interviewed at the Child Advocacy Center, Richmond Police Detective Lieutenant Don Davenport contacted Kevin Hiner, a detective in the Computer Crimes Unit and a Task Force Officer assigned to the FBI, Richmond Division Innocent Images Taskforce, and to the Southern Virginia Internet Crimes Against Children Task Force, and informed Hiner of the burgeoning investigation into Church's activities. (Hiner Aff. Attach. B ¶2).  Hiner contacted Valentino and, after reviewing notes from her interview with MV1, requested and was given permission to examine MV1's cellular telephone. The text messages described by MV1 were not discovered, but Hiner's search revealed that text messages between MV1 and Church had been deleted. Id. at ¶7. Based on all the evidence that had then been acquired, Hiner prepared an affidavit for a warrant to search Church's residence.

In his application for the warrant, Hiner summarized the aforementioned facts and asserted that, together, they "indicate[d] that on November 2, 2015 Charles Church utilized a cellular telephone to exchange SMS text messages with MV1 prior to the sexual assault." (Hiner Aff. Attach. B ¶12). Based on the this evidence, Hiner concluded "that probable cause exists that evidence pertaining [sic] the forcible sodomy of MV1 is being

3

stored on a cellular telephone or other device capable of storing digital data." Id. Consistent with this conclusion, Hiner's warrant application identified Forcible Sodomy (Va. Code Ann. § 18.2-67.1) as the offense in relation to which a search was requested. Id. at ¶1. Additionally, however, Hiner requested permission to search for evidence of the Possession, Reproduction, Distribution, and Facilitation of Child Pornography (Va. Code Ann. § 18.2-374.1) ("Child Pornography"). Id.

In his attachment outlining the "things or persons to be searched," Hiner did not list sheets, towels, bed linens, or any other form of physical evidence that might be associated with the crime of Forcible Sodomy. Instead, he requested authorization to search and seize, inter alia, "any electronic devices that are capable of capturing, collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data." (Hiner Aff. Attach. A ¶2). Under the subheading "Materials Relating to Child Erotica and Depictions of Minors," Hiner specified in four sub-paragraphs the specific evidence of Child Pornography for which he was seeking permission to search. Id. ¶13-16. There was no mention of any specific evidence relating to the alleged Forcible Sodomy.

4

In addition to "the material facts constituting probable cause" found in Attachment B and the "things or persons to be searched" found in Attachment A, Hiner further provided, in Attachment C, a 21-page document summarizing his police experience and containing detailed explanations of modern electronics and the characteristics of child pornographers. See Hiner Aff. Attach C. The document did not specifically connect any of this information or experience to Church or to the specifics of his case. Id. It also did not establish any connection between child molestation and child pornography generally. Id.

The search warrant was issued by the Circuit Court for the City of Richmond on November 4, 2015 at 3:55 p.m. Shortly thereafter, Hiner contacted Detective Davenport, who was interviewing Church's wife at that time, and requested that he obtain a permission to search form from her. Davenport heeded Hiner's request, and a written "Permission to Search" form was signed by Mrs. Church at 4:28 p.m.[1] Davenport testified that the request for consent was necessary because the warrant "did not cover the acts of forcible sodomy or the physical sexual assault

---

[1] Although this consent form contained a statement of voluntariness and did not expressly limit the search to evidence of Forcible Sodomy, the parties dispute both the scope and the voluntariness of this consent. Pursuant to this Court's order on September 14, 2016, the consent issue will be resolved by this Court on a future date after supplemental briefing has occurred.

5

of the victim." (Tr. Evid. Hrg. 15:15-18, ECF No. 29). This testimony was corroborated by that of Detective Jones, one of the officers who executed the warrant, who testified that at the time of the search he "was aware that the other items other than the electronics had been omitted from the scope of the search warrant." Id. at 39:16-18.

The Richmond Police executed the warrant the same day at 4:40 p.m., seizing two cellular telephones, one LG tablet computer ("tablet"), and one HP laptop computer ("laptop") from the defendant's residence. (SEARCH INVENTORY AND RETURN, ECF No. 18-1). Hiner conducted a forensic examination of the tablet and computer, and discovered evidence of child pornography within the "cache associated with the tablet's web browser, as well as in the tablet's thumbnail cache." (GOVERNMENT'S RESPONSE IN OPPOSITION 6). Hiner also uncovered links to Church's Google email account relating to this material. Based on the results of the search of Church's home, Hiner applied for and obtained a second search warrant for Church's Google email account. Id. In response to this second warrant, Google provided records related to Church's email account and search history which yielded further evidence of both visited websites and searches indicative of child pornography.

## B. Procedural History

In January 2016, Church was indicted on two counts of Forcible Sodomy and one count of Rape in the Circuit Court of Richmond. On June 20, 2016, while the state court case remained pending, a criminal complaint was filed in this Court and a federal warrant was issued for his arrest. (ECF No. 1)(ECF No. 5). On June 21, 2016, the state charges against Church were *nolle prossed*, he was taken into federal custody, and he made his initial appearance in this Court. (ECF No. 7). On July 19, 2016, Church was indicted on six counts of Receipt of Child Pornography (18 U.S.C. § 2252A(a)(2)(A)) and two counts of Possession of Child Pornography (18 U.S.C. § 2252A(a)(5)(B)). (ECF No. 13).

On August 12, 2016, Church filed the pending MOTION TO SUPRESS EVIDENCE ("Def. Mot."), ECF No. 17, seeking to suppress all evidence gathered from the seizure of his tablet and laptop computer, as well as the evidence from his Google account collected pursuant to the second warrant. The GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS ("Gov. Resp."), ECF No. 19, was filed on August 19, and DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS EVIDENCE ("Def. Reply"), ECF No. 20 was filed on August 26. An evidentiary hearing was held on September 14, 2016 and, as a result of the evidence presented, the Court ordered the parties

7

to submit supplemental briefing addressing specific issues
surrounding the nature of the consent given by Mrs. Church.
(Order, ECF No. 28). A second hearing on Church's suppression
motion has been scheduled for October 31, 2016, at 10:00 a.m.,
where the parties will argue the question of consent. No
additional briefing or oral argument is required for the Court
to resolve the legal questions surrounding the validity of the
warrant.

**LEGAL STANDARDS**

## A.    Validity of Warrants

The Constitution requires that "no Warrants shall issue,
but upon probable cause." U.S. Const. amend. IV. The Supreme
Court has defined probable cause as the "fair probability that
contraband or evidence of a crime will be found in a particular
place." Illinois v. Gates, 462 U.S. 213, 238 (1983).
Nevertheless, the Court has counseled that probable cause is "a
fluid concept—turning on the assessment of probabilities in
particular factual contexts—not readily, or even usefully,
reduced to a neat set of legal rules." Florida v. Harris, 133 S.
Ct. 1050, 1056, (2013). Rather than apply a rigid formula or
test, courts must instead simply consider whether "the known
facts and circumstances are sufficient to warrant a man of
reasonable prudence in the belief that contraband or evidence of

a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996).

Given the fact-specific nature of the probable cause inquiry, the Supreme Court has recognized that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." United States v. Leon, 468 U.S. 897, 914 (1984). In light of this propensity for genuine disagreement, the Supreme Court and Fourth Circuit have instructed that "great deference" should be given "to a magistrate's determination." Spinelli v. United States, 393 U.S. 410, 419 (1969); accord United States v. Chandia, 514 F.3d 365, 373-74 (4th Cir. 2008). Elaborating further, the Supreme Court has explained that "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238 (quoting Jones v. United States, 362 U.S. 257, 272 (1960).

Notwithstanding the deference that is owed to the magistrate's determination, some logical inferences, without more, cannot support a finding of probable cause as a matter of law. See, e.g., Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (rejecting the inference that probable cause to search a person could be based on the individual's "mere propinquity" to another person or location suspected of criminal activity). In United States v. Doyle, 650 F.3d 460 (4th Cir. 2011), the Fourth

9

Circuit determined that one such impermissible inference involved the link between child pornography and child molestation. Reviewing a warrant based on the link between the two crimes, the Doyle Court was unequivocal in its conclusion that "evidence of child molestation alone does not support probable cause to search for child pornography." Id. at 472.

In so holding, the Fourth Circuit joined, with approval, decisions from the Second and Sixth Circuits that had addressed the same issue. See United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008) ("It is beyond dispute that the warrant was defective. . . Detective[s] established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)."); United States v. Falso, 544 F.3d 110,124 (2d Cir. 2008) ("That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough."). Moreover, while the Fourth Circuit has not revisited the issue since Doyle, other circuits have joined it in what is now the clear majority view on this issue. See Virgin Islands v. John, 654 F.3d 412, 420 (3d Cir. 2011); Dougherty v. City of Covina, 654 F.3d 892, 898 (9th Cir. 2011). So far, only the Eighth Circuit appears to have come to a different conclusion. See United States v. Colbert, 605 F.3d 573, 579 (8th Cir. 2010) (holding that the "intuitive link" between child molestation and

10

child pornography was enough to allow evidence of one to sustain a warrant for the other).

## B.    The Good-Faith Exception to the Warrant Requirement

Even if a search or seizure is ultimately invalidated under the Fourth Amendment, the exclusionary rule will not always be the appropriate remedy. United States v. Calandra, 414 U.S. 338, 348 (1974) (holding that the rule should apply "where its remedial objectives are thought most efficaciously served"). This is especially true where a search has been conducted pursuant to a warrant that is later invalidated. In such circumstances, the reviewing court must first consider whether the "good faith exception" to the warrant requirement applies. United States v. Leon, 468 U.S. 897, 922 (1984).

In Leon, the Supreme Court recognized that where police act within the scope of a warrant obtained in good faith, "there is no police illegality and thus nothing to deter." Id. at 921. As a result, the Court held that the exclusionary rule should not ordinarily apply where officers act "in objectively reasonable reliance on a subsequently invalidated search warrant." Id. at 922. In explaining the "good-faith" required of officers, the Leon Court provided four examples where suppression would nonetheless remain appropriate:

>    (1) Where the magistrate was misled by deliberately or recklessly false information in the affidavit.

11

(2)  Where the magistrate so abandons his judicial role
     that a "reasonably well trained police officer" would
     not rely on the warrant.

(3)  Where the warrant is based on an affidavit
     "so lacking in indicia of probable cause as to render
     official belief in its existence entirely
     unreasonable."

(4)  Where the warrant is "so facially deficient . . . that
     the executing officers cannot reasonably presume it to
     be valid."

Leon, 468 U.S. at 923.

     Considered together, these examples from Leon instruct
district courts considering suppression to ask whether "a
reasonably well trained officer would have known that the search
was illegal despite the magistrate's authorization." Id. at 922
n.23; see also United States v. Bynum, 293 F.3d 192, 195 (4th
Cir. 2002).  In asking this question, "the subjective intent of
the officers is of no import." United States v. Rush, 808 F.3d
1007, 1012 (4th Cir. 2015). The good-faith exception will only
apply if it was "objectively reasonable" for the officers to
believe their conduct was "lawful," id. at 1013, keeping in mind
that a "reasonably competent public official should know the law
governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 819
(1982); see also Doyle, 650 F.3d at 473 ("police officers
generally have a duty to know the basic elements of the laws
they enforce.")

These principles inform the resolution of that aspect of the motion to suppress that challenges the validity of the warrant and the application of the good faith exception.

## DISCUSSION

### A.  Validity of the Warrant

Although probable cause had been established to search for evidence of Forcible Sodomy contained within Church's cellular telephone, Hiner's affidavit provided no ground to believe that evidence of either Forcible Sodomy or Child Pornography would be found on Church's tablet, laptop computer, or other electronic devices.  Because the affidavit did not provide even a substantial basis for concluding that probable cause existed to seize and search Church's tablet and laptop computer, the warrant authorizing their search and seizure cannot be sustained.

At the time the warrant was executed at the Church residence, no evidence had been discovered connecting him to the use or possession of child pornography. See Hiner Aff. Attach. B.  In fact, when expressly asked about the subject, MV1 expressly denied being shown any pictures during the alleged Forcible Sodomy. (Def. Mot. 2). In the "material facts constituting probable cause" provided by Hiner in his affidavit,

13

the phrase "child pornography" (or its equivalents) is not even mentioned. See Hiner Aff. Attachment B.

Given the lack of tangible evidence related to Child Pornography, the only conceivable basis for issuing a warrant to search Church's property for evidence of that crime was the evidence that he had committed Forcible Sodomy. Even this is a charitable interpretation, however, because the affidavit fails to offer even a conclusory argument connecting the two offenses. Nevertheless, the implication is clear: evidence of child molestation establishes probable cause to search for child pornography. In other words, the affidavit rests on the identical argument the Fourth Circuit firmly rejected in Doyle.[2]

The government's attempts to distinguish Doyle are unpersuasive. Although it is true that the warrant in Doyle also suffered from deficiencies not present in the search warrant here, those deficiencies played no part in the Fourth Circuit's discussion of the link between Forcible Sodomy and Child Pornography. And, while it is certainly true that Hiner provided a "thicker" affidavit than the detectives in Doyle,

_____

[2] The government offers United States v. Williams, 592 F.3d 511 (4th Cir. 2010) as proof that the Fourth Circuit does recognize this connection between Forcible Sodomy and Child Pornography, but Williams is inapposite. Williams involved threats to children communicated over a computer, and the only question presented on appeal was whether the admittedly valid warrant authorizing the search for evidence of computer harassment permitted police to open up the additional files on the computer where child pornography was ultimately discovered. Id. at 514.

none of the additional information bears on the probable cause analysis. The only "material facts supporting probable cause" offered by Hiner related to child molestation [standing alone], and "evidence of child molestation alone does not support probable cause to search for child pornography." Doyle, 650 F.3d at 472; see Hiner Aff. Attach. B.

Hiner's affidavit also failed to provide a substantial basis for concluding there was probable cause to search Church's tablet or computer for evidence of Forcible Sodomy. The only electronic device implicated by the evidence provided in the Hiner Affidavit was Church's cellphone, and that had already been seized by police at the time of his arrest. (Gov. Resp. 6, n. 2). Moreover, the record makes it clear that evidence of Forcible Sodomy was not the object of the warrant. The affidavit listed no physical items related to Forcible Sodomy under the "persons or items to be searched," and several officers testified that they were aware the warrant "did not cover the acts of forcible sodomy or the physical sexual assault of the victim." (Tr. Evid. Hrg. 15:15-18, ECF No. 29).

The fact that SMS text messages between Church and MV1 had apparently been deleted from MV1's cellular telephone does not alter this analysis. The Government contends that, because of the "advances in mobile technology and the advent of cloud computing," the "text messages between MV1 and the defendant

15

could just as likely been facilitated by a tablet, a laptop, or another type of electronic device." (Gov. Resp. 16-17). In addition to being factually erroneous, this argument was never offered by Hiner.

No evidence of any kind was presented to the magistrate suggesting that the deleted SMS text messages could or would be discovered on any electronic device other than Church's cellphone. While the Government's brief repeatedly asserts that that the text messages could have been found on the tablet or laptop, Hiner's affidavit did not. See Hiner Aff. Attach. B. Instead, when Hiner did address the role of electronics in the investigation against Church, he had this to say:

> Taken together, the above information indicates that that [sic] on November 2, 2015 Charles Church utilized *a cellular phone to exchange SMS text messages* with MV1 prior to the sexual assault.

Id. (emphasis added). Thus, even if the Government's "interconnected devices" theory were persuasive, it was never presented to the magistrate. It cannot therefore serve as a substantial basis for probable cause in hindsight. Courts "must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

The warrant in this case was clearly designed to search for evidence of child pornography, but was justified only by

16

evidence of child molestation. Our circuit, in Doyle, unequivocally rejects this precept, and it is binding precedent on this Court. Therefore, the warrant issued on November 4, 2015 lacked a substantial basis for its probable cause determination, and thus is invalid.

**B.    The Good Faith Exception to the Warrant Requirement**

For many of the reasons previously outlined above, the good-faith exception to the warrant requirement cannot apply in this case. The warrant to search the Church residence was issued without any tangible evidence connecting Church to the crime of child pornography, in direct contradiction to binding Fourth Circuit precedent. Under such circumstances, "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002). Therefore the good-faith exception does not apply.

Issued in 2011, the Doyle decision made it clear that a search warrant for evidence of child pornography cannot be based solely on evidence of child molestation. Doyle 650 F.3d at 472. In doing so, the Doyle court declined to apply the good-faith exception even though it was the first time that Court had confronted the issue, ruling that the additional evidence of child pornography presented in the affidavit (hearsay evidence that one victim was shown pictures of "nude children") was

17

"completely devoid" of the information necessary to assess staleness. Id. at 474. Doyle had been the clearly established law of the Fourth Circuit for four years by the time the search warrant in this case was issued. It is one thing to expand Leon's good faith exception to situations where police act in "objectively reasonable reliance on binding appellate precedent." See Davis v. United States, 564 U.S. 229, 249–50 (2011). It is another proposition entirely to extend safe harbor to circumstances where the warrant is issued in direct *contradiction* to that precedent.

The Supreme Court has instructed that a "reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). The Fourth Circuit has echoed that sentiment, insisting in Doyle that "police officers generally have a duty to know the basic elements of the laws they enforce." 650 F.3d at 473 (rejecting the argument "that the legal distinction between mere nudity and child pornography is not something that a reasonable law enforcement officer in Virginia should have known"). In other words, ignorance of clearly established precedent is no excuse. See United States v. Rush, 808 F.3d 1007 (4th Cir. 2015) (declining to apply the good-faith exception where police conduct was "contrary to longstanding precedent.")

The United States argues that the warrant is distinguishable from Doyle because Hiner's affidavit "identified the defendant's residence; it identified two criminal offenses under investigation; it contained a precise listing of the items to be seized and searched; [and] it contained 33 pages of relevant information to support the basis for the search." (Gov. Resp. 26). But the Hiner affidavit merely provided in more elaborate detail what the Fourth Circuit rejected in Doyle.  If the good-faith exception did not apply the first time the Fourth Circuit rejected the connection between child pornography and child molestation, it can hardly apply four years later simply because Hiner's affidavit was longer.[3]

In Hiner's affidavit, the five-page "Attachment B" contained "the material facts supporting probable cause," and it failed to provide even a single piece of evidence connecting Church to the crime of Child Pornography.  Hiner Aff. Attach. B. On its own and as a matter of first impression, that would likely be enough to preclude application of the good-faith exception.  The additional weight of the binding precedent of

---

[3] Other district courts in this jurisdiction have come to the same conclusion in similar cases. See, e.g., United States v. Shanklin, 2013 WL 6019216, *23-24 (E.D. Va. Nov. 13, 2013) (refusing to apply the good-faith exception where "the only connection between the accused crime and Defendant's computers" was the detective's "general knowledge of sex offenders as explained in the affidavit, which bore no specific relation to Defendant or the offense charged").  Id. at ** 23-25.

<u>Doyle</u> only strengthens that conclusion.  The Court therefore holds that the warrant to search for electronic devices for evidence of child pornography was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Leon</u>, 468 U.S. at 923. The good-faith exception to the warrant requirement does not apply.

## CONCLUSION

For the reasons stated above, the Court holds that the warrant to search electronic devices for evidence of child pornography was invalid, and that the good-faith exception to the warrant requirement does not apply.  Whether the search may be upheld on the basis of consent will be addressed in a separate opinion.

It is so ORDERED.

_____ /s/     *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  October  17 , 2016

20