IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                                          Criminal No. 3:16cr92

CHARLES E. CHURCH,

        Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Charles E. Church's MOTION TO SUPPRESS EVIDENCE ("Def. Mot.") (ECF No. 17) and the United States' MOTION TO RECONSIDER (ECF No. 37). For the reasons set forth below, the Defendant's Motion will be GRANTED, and the United States' Motion will be DENIED.

## BACKGROUND

### A. Procedural History

In January of 2016, Church was indicted on two counts of Forcible Sodomy and one count of Rape in the Circuit Court of the City of Richmond. While the state case was pending, a criminal complaint (ECF No. 1) was filed in this Court and a federal warrant (ECF No. 5) was issued for Church's arrest. Thereafter, the state charges against Church were *nolle prossed*, he was taken into federal custody, and he made his initial appearance (ECF No. 7). Church was indicted (ECF No. 13) on six counts of Receipt of Child Pornography in violation of 18 U.S.C.

1

§ 2252A(a)(2)(A), and two counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)).

On August 12, 2016, Church filed this MOTION TO SUPPRESS EVIDENCE ("Def. Mot."), seeking to suppress all evidence gathered from the seizure of his tablet and laptop computers, as well as all evidence from his Google e-mail account collected pursuant to the second warrant (Def. Mot. 1). The United States filed a response ("U.S. Resp."), and Church filed a reply ("Def. Reply") (ECF No. 19). An evidentiary hearing was held and, at the request of the Defendant, the Court ordered supplemental briefing, keyed to the transcript of that hearing, addressing specific issues surrounding the nature of the consent given by Peesha Church, the Defendant's spouse. Church then filed a supplemental brief ("Def. Supp.") (ECF No. 30), the United States filed a response ("U.S. Supp. Resp.") (ECF No. 31), and Church filed a reply ("Def. Supp. Reply") (ECF No. 34).

On October 17, 2016, the Court issued a Memorandum Opinion (ECF No. 32) holding that the search warrant obtained and executed against Church on November 4, 2015 was invalid under Fourth Circuit precedent, and that the good faith exception to the warrant requirement, first articulated by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984), did not apply. See United States v. Church, 2016 WL 6123235 (E.D. Va. Oct. 18, 2016). Pursuant to that opinion and the Court's prior orders,

2

further evidence and argument was heard on the consent issue at a second hearing ("Hrg. II"), after which a final supplemental round of briefing was ordered. The United States filed its brief ("U.S. Supp. II.") (ECF No. 37) and included within it a MOTION TO RECONSIDER, asking the Court to revisit certain aspects of its prior Memorandum Opinion (ECF No. 32). Church filed a response ("Def. Supp. Resp.") (ECF No. 38), and the United States filed a reply ("U.S. Supp. Reply") (ECF No. 39). The motion is now ripe for decision.

## B. Facts

On November 3, 2015, a minor female ("MV1") reported to her family guardian that Church, a Police Officer for the City of Richmond, had sexually assaulted her at his Richmond home sometime after 7:00 p.m. on the previous evening (Def. Mot. 1). Following this report, the family guardian contacted Richmond police, voluntarily turned over MV1's cellular telephone to them, and transported MV1 to the Pediatric Emergency Room at Virginia Commonwealth University Medical Center, where she was examined and interviewed by a Forensic Nurse. (Hiner Aff. Attach. B ¶6). Following this examination, a physical evidence recovery kit (PERK) was delivered to Detective Steve Kendell of the Richmond Police Department (RPD). Id.

The following morning, November 4, 2015, MV1 was taken to the Child Advocacy Center and interviewed a second time by Ms. Brianna Valentino. (Hiner Aff. Attach. B ¶2) During that interview, MV1 told Valentino that she and her younger sibling (MV2) were in an upstairs bedroom preparing to go to sleep when Church exchanged several SMS (short message service) text messages with her. Id. at ¶2. In one message, Church queried MV1 whether MV2 was asleep.  MV1 stated that, after she informed Church by text message that MV2 had fallen asleep, Church responded that he was coming upstairs. Id. MV1 told Valentino that she was led by Church into his bedroom, where upon Church undressed them both, digitally penetrated her vagina and anus, attempted to penetrate her vagina and anus with his penis, and forced her to perform oral sexual intercourse on him. Id. at ¶5. MV1 was also asked whether Church had ever sent or showed her pornographic images or videos, and MV1 stated that he had not. (Def. Mot. 2).   Based on MV1's statements to Valentino and the PERK from VCU Hospital, Richmond Police arrested Church at 1:30 p.m. for Forcible Sodomy of a Minor. (Hiner Aff. Attach. B ¶2, ¶8).  As part of the arrest, Church's cellular telephone was seized by the RPD and his apartment was secured.

While MV1 was being interviewed at the Child Advocacy Center, Richmond Police Detective Lieutenant Don Davenport contacted Kevin Hiner, a detective in the Computer Crimes Unit

and a Task Force Officer assigned to the FBI's Richmond Division Innocent Images Taskforce and Southern Virginia Internet Crimes Against Children Task Force. (Hiner Aff. Attach. B ¶2). Davenport informed Hiner of the burgeoning investigation into Church's activities. Id. Hiner contacted Valentino and, after reviewing notes from her interview with MV1, requested and was given permission to examine MV1's cellular telephone. The text messages described by MV1 were not discovered, but Hiner's search revealed that text messages between MV1 and Church had been deleted. Id. at ¶7. Based on all the evidence that had then been acquired, Hiner prepared an affidavit for a warrant to search Church's residence.

In the application for the warrant, Hiner summarized the aforementioned facts and asserted that, together, they "indicate[d] that on November 2, 2015 Charles Church utilized a cellular telephone to exchange SMS text messages with MV1 prior to the sexual assault." (Hiner Aff. Attach. B ¶12). Based on the this evidence, Hiner concluded "that probable cause exists that evidence pertaining [sic] the forcible sodomy of MV1 is being stored on a cellular telephone or other device capable of storing digital data." Id. Consistent with this conclusion, Hiner's warrant application identified Forcible Sodomy (Va. Code Ann. § 18.2-67.1) as the offense in relation to which a search was requested. Id. at ¶1. Additionally, however, Hiner requested

permission to search for evidence of the Possession, Reproduction, Distribution, and Facilitation of Child Pornography (Va. Code Ann. § 18.2-374.1) ("Child Pornography"). Id.

In his attachment outlining the "things or persons to be searched," Hiner did not list sheets, towels, bed linens, or any other form of physical evidence that might be associated with the crime of Forcible Sodomy. Instead, he requested authorization to search and seize, inter alia, "any electronic devices that are capable of capturing, collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data." (Hiner Aff. Attach. A ¶2). Under the subheading "Materials Relating to Child Erotica and Depictions of Minors," Hiner specified in four sub-paragraphs the specific evidence of Child Pornography for which he was seeking permission to search. Id. ¶13-16. There was no mention of any specific evidence relating to the alleged Forcible Sodomy. The search warrant was issued by the Circuit Court for the City of Richmond on November 4, 2015 at 3:55 p.m.

Also on November 4, 2015, Detective Sandy Ledbetter-Clarkson ("Ledbetter"), then-assigned to the United States Marshals' fugitive task force, reached out to the Defendant's wife, Peesha Church ("Ms. Church"), and asked her to come to the

6

police station for "something to do with her husband." (Tr. Evid. Hr. 44:20-45:24). Ms. Church agreed, and drove herself to the Richmond Police headquarters approximately one hour later. Id.

Shortly thereafter, Hiner contacted Davenport, who was interviewing Ms. Church at that time, and requested that he obtain a permission to search form from her. Davenport testified that the request for consent was necessary because the warrant "did not cover the acts of forcible sodomy or the physical sexual assault of the victim." (Tr. Evid. Hrg. 15:15-18). This testimony was corroborated by Detective Stephen Jones, one of the officers who executed the warrant, who testified that at the time of the search he "was aware that the other items other than the electronics had been omitted from the scope of the search warrant," id. at 39:16-18, and that "[t]here was nothing in the search warrant that allowed me to collect anything other than the electronic items." Id. at 39:4-5.

There was conflicting testimony regarding the circumstances and content of Ms. Church's interview with Ledbetter and Davenport; however, the testimony is in agreement as it relates to the scope of consent.[1] Both Ms. Church and Davenport testified

---

[1]   The conflicting testimony related to the issue of voluntariness; however, the Defendant has withdrawn his voluntariness argument. See Tr. Hrg. II 16:23-17:2 ("[W]e're not advancing any longer the argument that Peesha Church's consent

7

that the only crime that they discussed during the interview was the charge of Forcible Sodomy, and that the topic of child pornography was never mentioned. Id. at 28:9-20, 60:4-25. No indication was given to Ms. Church that her husband was being investigated for any crime other than Forcible Sodomy, and at no point did the police suggest that they had any interest in any tablet or laptop computers. Id.

Although the detectives' "sole focus" was on the crime of forcible sodomy, id. 28:18-20, the Consent Form signed by Ms. Church was not limited to any particular crime. See ECF No. 19-1 ("Consent Form"). In relevant part, the Consent Form reads as follows (italics indicate hand-written portions):

> I, *Peesha Barot-Church*, hereby authorize *Richmond Police Department* [sic] duly appointed Police Officers of the City of Richmond, Virginia, to conduct a complete search of *residence*: *Richmond, Va*.

> These officers are authorized by me to seize from my *residence* any letters, papers, paraphernalia, material or other items they have reason to believe are connected with a crime.

> This written permission is being given by me to the above named, duly appointed Police Officers voluntarily and without any threats or promises of any kind.

Id. As confirmed by the testimony at the evidentiary hearing, the only express limitation on this consent is contained in the form itself, which limited the items or materials to be seized

---

was involuntary.")

to those which the officers "have reason to believe are connected with a crime." Id. Ms. Church confirmed that, although her conversation with Davenport and Ledbetter focused on the crime of Forcible Sodomy, neither Detective verbally limited the scope of consent to any specific items. (Tr. Evid. Hr. 70:5-10.)

The search warrant was executed on November 4, 2015, at 4:40 p.m., when officers entered the Church residence and began the process of photographing the premises. At that time, "the consent to search [form] hadn't actually made it to the scene." Id. at 41:18-20. Consequently (according to Jones), the tablet and computer in question were seized "pursuant to the warrant," although Jones later indicated that he believed he also could have seized them pursuant to the consent. Id. at 38:22-39:20, 41:8. Jones also testified that the Consent Form arrived at the scene before any objects were actually seized. Id. at 41:25-42:6.

As reported in the search warrant inventory, officers seized two cellular telephones, one LG tablet computer ("tablet"), and one HP laptop computer ("laptop") from the defendant's residence.[2] (Warrant, ECF No. 18-1).  Hiner conducted a forensic examination of the tablet and computer, and

---

[2] Church does not contest the search or seizure of the cellular telephones. See Def. Mot. at 2, n.4 ("Mr. Church does not maintain that any evidence collected off of his cellular phone(s) should be suppressed.")

discovered evidence of child pornography within the "cache associated with the tablet's web browser, as well as in the tablet's thumbnail cache." (U.S. Resp. 6). Hiner also uncovered links to Church's Google e-mail account relating to this material. Id.

Based on the results of the search of Church's home, Hiner applied for and obtained a second search warrant for Church's Google e-mail account. Id. In response to this second warrant, Google provided records related to Church's account, including his search history, which yielded further evidence of both visited websites and searches indicative of child pornography. Id. Church also seeks suppression of this evidence, arguing that it stems from the unconstitutional search and seizure of his tablet and laptop computers. (Def. Mot. 1, n.1). The United States maintains that the seizure was constitutional because of the consent given by Ms. Church (Gov. Supp. Resp. 7-10), requests that the Court reconsider its earlier ruling that the warrant was defective and that the Leon exception did not apply, and otherwise argues that suppression is unwarranted under the circumstances. See Gov. Supp. II. at 3, 13-17.

## LEGAL STANDARDS

### A. The Consent Exception to the Warrant Requirement

It is well-settled under the Fourth Amendment that a search conducted pursuant to valid consent does not require either probable cause or a warrant. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). For a consent search to be valid, the search must be within the scope of the consent, which in turn must be knowing, voluntary, and given by someone with authority to do so. United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). Although his motion initially challenged the voluntariness of the consent, Church now concedes that the consent given in this case meets each of these latter three elements. See Tr. Hrg. II, 16:23-17:2.

"Where there is no question that consent was voluntary, the real issue becomes the scope of the authorization given to the officers." United States v. Coleman, 588 F.3d 816, 819 (4th Cir. 2009). In deciding that "real issue," the Supreme Court has instructed that "[t]he scope of a search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991). That being said, the object of a search is not always expressed, and where a general and unqualified consent is given, the Fourth Amendment "provides no grounds for requiring a more explicit authorization." Id. at 252. In any event, the standard to be deployed to assess an officer's interpretation of consent

11

is one of "objective reasonableness." Id. at 251. The Supreme Court explained that this standard requires a determination of what "the typical reasonable person [would] have understood by the exchange between the officer and the [consenter]." Id. That determination must be "made as of the time when the search takes place, based on the information available to officers *at that time*." Coleman, 588 F.3d at 819 (4th Cir. 2009) (emphasis in original).

Although it remains true that the "giver of consent . . . controls the scope of consent," id. at 820, the subjective belief of the consent-giver (or the officer) is irrelevant to the analysis. See United States v. Ortiz, 669 F.3d 439, 448 (4th Cir. 2012). The officer's determination that consent has been given must be objectively reasonable; it need not be correct nor even well-intended. See United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005). Where consent is given pursuant to a written form, the Fourth Circuit has focused on the express language of that form, and has described the breadth or narrowness of that language as the "most important[]" factor. Coleman, 588 F.3d at 820-821. At the same time, language in such a form cannot override any express or implied limitations given before it is signed. See Gentile v. United States, 419 U.S. 979, 980 (1974)

## B. The Exclusionary Rule

Even if a search or seizure is ultimately deemed invalid under the Fourth Amendment, the exclusionary rule will not always be the appropriate remedy. See United States v. Calandra, 414 U.S. 338 (1974). Although suppression of the evidence was once considered a part of the constitutional right enshrined in the Fourth Amendment, over the last half-century the exclusionary rule has increasingly been "restricted to those areas where its remedial objectives are thought most efficaciously served." Id. at 348. Thus, it is now well-settled that suppression is not a constitutional right and will apply only if it would "result in appreciable deterrence." United States v. Leon, 468 U.S. 897, 909 (1984).

In more recent cases, the Supreme Court has emphasized that even "appreciable deterrence" may not be enough to warrant suppression. Indeed, "[r]eal deterrent value is a 'necessary condition for exclusion,' but it is not 'a sufficient' one. Davis v. United States, 564 U.S. 229, 237 (2011) (citing Hudson v. Michigan, 547 U.S. 586, 596 (2006). Put simply, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Id.; see also Herring v. United States, 555 U.S. 135, 141 (2009). Given the "heavy toll" exacted by the rule, police conduct must therefore be "sufficiently deliberate that exclusion can meaningfully

13

deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144. Where police conduct is deliberate, reckless, or grossly negligent, the deterrent value of suppression is typically high enough to warrant suppression. Davis, 564 U.S. at 238. By contrast, where the police act with an "objectively reasonable good-faith belief" in the legality of their conduct, or where their conduct involves only "isolated negligence," exclusion can rarely "pay its way." Id. (quoting Herring & Leon).

Notwithstanding the broad language espoused in Herring, Davis, and Leon, lower courts have tended to apply those decisions narrowly. See United States v. Rush, 808 F.3d 1007, 1010 (4th Cir. 2015) (characterizing Herring as an extension of the good-faith exception to "certain cases of 'isolated' negligence."); see also United States v. Washington, 573 F.3d 279, 289 (6th Cir. 2009) (holding that, despite Herring, no exception to the exclusionary rule covers cases in which the officer executing the search does so unreasonably). Notwithstanding Davis's broad command to order suppression only when its "deterrence benefits" exceed its "heavy costs," 564 U.S. at 237, the Fourth Circuit has also relied on Davis only for its narrow holding—that suppression is inappropriate where police act pursuant to later-invalidated binding precedent. See United States v. Hill, 776 F.3d 243, 250 (4th Cir. 2015). In

Hill, the Fourth Circuit refused to "extend" Davis to a case involving a warrantless dog sniff at a defendant's home, because the then-binding precedent relied upon the police (which held that a dog sniff of a person's luggage was not a search) was not sufficiently analogous. Id. In doing so, the Hill court did not identify nor otherwise discuss whether any police conduct in the case was "reckless," "deliberate," or "grossly negligent." See Davis, 564 U.S. at 238.[3]

## DISCUSSION

### A. The Scope of Consent

The facts and testimony in this case demonstrate that the seizure of the tablet and laptop computers exceeded the scope of Ms. Church's consent. The "sole focus" of the interview of Ms. Church by Davenport and Ledbetter was the crime of Forcible Sodomy, i.e. the alleged sexual assault of MV1. (Tr. Evid. Hrg. 28:18-20.) Moreover, the uncontroverted testimony of both Jones and Davenport clearly demonstrates that Ms. Church's consent was obtained specifically because the warrant "did not cover the acts of forcible sodomy or the physical sexual assault of the victim." Id. at 15:15-18. Given that testimony, and especially

---

[3] Whether it is permissible for the Court of Appeals to narrow the broad language used by the Supreme Court is a matter to be decided by the Court of Appeals and the Supreme Court. As a district court within the Fourth Circuit, this Court is obligated to apply circuit precedent.

considering the undisputed fact that the roughly two-hour interview with Ms. Church did not include even the slightest indication that police were interested in any crime other than the sexual assault, it is likely that the "typical reasonable person" would have understood Ms. Church's consent to have been limited to evidence associated with that crime. Jimeno, 500 U.S. at 251. Contrary to the United States' arguments, that limitation places Church's tablet and laptop computers outside the scope of consent.

The United States argues that, notwithstanding the focus of the investigation at the time, the broad language of the Consent Form should control, given that neither Ms. Church nor the officers questioning her ever expressly placed any verbal limitations on what they were seeking. (U.S. Supp. Resp. 7-8). Secondly, the United States suggests that, even if the scope of consent was limited to evidence of the assault, Ms. Church "knew the RPD was interested in searching electronic devices in its investigation" into that crime because she had been told that a cellphone had been used by her husband to communicate with the victim. Id. at 8. Neither of these arguments is persuasive.

The language of the Consent Form is unquestionably broad—it expressly limits what the officers may seize only to items that "they have reason to believe are connected with a crime." Notwithstanding the breadth of the form, an unquestionably

16

important factor in determining consent, see Coleman, 588 F.3d at 820-821, the test remains one of "objective reasonableness," defined by what the "the typical reasonable person [would] have understood by the exchange between the officer and [Ms. Church]." Jimeno, 500 U.S. at 251. And, "the typical reasonable person" would expect that even a broadly worded consent form, if signed after approximately two hours of questioning in which the "sole focus" was an allegation of sexual assault, would be directed at and limited to evidence of that crime.[4] In other words, given the context, it is clear that evidence of the assault was the "expressed object" of the search for which Davenport acquired Ms. Church's permission. Id. Therefore, the scope of the consent was limited to the type of evidence associated with that offense. Church's laptop and tablet computers do not fall within that scope.

The United States disputes this conclusion in its second argument, which relies on the interconnected nature of many modern electronic devices, cloud computing, and the fact that

---

[4] While there is nothing defective in the consent to search form used by the RPD in this case, it must read in light of the conversation that preceded it. See Gentile v. United States, 419 U.S. 979, 980 (1974) ("At the time petitioner signed the form he had been questioned and charged with the burglary of a particular store. Thus his reasonable expectations, *which must govern construction of the document*, were that he was authorizing the police to search his residence for evidence in connection with the only crime for which he was then a suspect.") (emphasis added).

17

Church used a cellphone to send SMS text messages to MV1 prior to the alleged assault. (U.S. Supp. Resp. 9-10) (U.S. Supp. II 1-10). Essentially, the United States argues that police could reasonably have believed that the text messages between Church and MV1 would be found on his tablet or laptop computers, and that, therefore, the seizure and search of those items were covered by the consent given by Ms. Church. Id. This argument is but a slight variant of the same argument that was rejected in the decision invalidating the warrant in this case. Recognizing this, the United States has styled its position as both an argument for upholding the search by way of consent, as well as a motion to reconsider the Court's earlier treatment of the warrant. (U.S. Supp. II. 1, 3, 13-16).

For the same reasons provided in the Court's earlier Memorandum Opinion (ECF No. 32), the United States' argument is unpersuasive. First, the Court declines to revisit its interpretation of United States v. Doyle, 650 F.3d 460 (4th Cir. 2011). Although United States disputes that the case "should be read for the proposition that a search warrant for evidence of child pornography cannot be based solely on evidence of child molestation," (Gov. Supp. II. 3), the fact remains that the Doyle Court specifically embraced that proposition, nearly word for word, before proceeding to quote approvingly several other Courts of Appeals that had reached the same conclusion. See

18

Doyle, 650 F.3d at 472 ("The bulk of the information supplied in the affidavit concerned allegations of sexual assault. *But evidence of child molestation alone does not support probable cause to search for child pornography.*")

The United States also requests reconsideration of the Court's prior observation that "no evidence of any kind was presented to the magistrate suggesting that the deleted SMS text messages could or would be discovered on any electronic device other than Church's cellphone." (U.S. Supp. II. 3) But, the United States offers no evidence from the affidavit contradicting that conclusion. Instead, it continues to point to the missing SMS text messages, this time as evidence that it was "objectively reasonable" for the officers to seize the computer and tablet in their investigation into the Forcible Sodomy. Id. The argument appears to be that, when a suspect sends a text message during the commission of an alleged offense, police automatically have probable cause to seize any and all electronics that the suspect owns, to search those electronics indiscriminately, and to do so without first presenting evidence that the additional electronics are relevant to the crime allegedly committed. All of this is permissible, the United States argues, because of the "integrated nature of the modern computer network." (U.S. Supp. 14). This post-hoc argument was unpersuasive when it was first asserted to defend the warrant,

and it remains unpersuasive as an attempt to justify the seizure under the guise of consent.

The United States may be correct in its general observation that "digital data can often be 'backed up' automatically among various electronic devices." (U.S. Supp. II. 2). Even so, this observation was never particularized to the facts in this case, or even to the type of data (SMS text messages) at issue here. Instead, this general assertion (mirrored by a single conclusory assertion in the Hiner Affidavit) is both the beginning and end of the argument. To this day, the United States has pointed to no evidence in the record (much less the warrant affidavit) indicating that *this* data (the SMS text messages sent by Church to MV1) might be found on *these* electronics (Church's tablet or laptop computer), or even that the actual devices in question were capable of such data-sharing. Indeed, the record even lacks evidence that the text messages were truly "missing," given that police had seized, but had not searched, Church's cellphone prior to the execution of the warrant.[5] Thus, the Court reaffirms its conclusion that "[n]o evidence of any kind was presented to the magistrate suggesting that the deleted SMS text messages

---

[5]   The simple explanation for these deficiencies in the record is that the officers in this case did not think as the United States suggests that they did—*i.e.*, they did not seize and search Church's computer equipment to search for evidence of child molestation. Instead, the record shows that they did so to search for child pornography.

20

could or would be discovered on any electronic device other than Church's cellphone." Church, WL 6123235 at *6 (ECF No. 32).

For the same reasons, the United States's "modern electronics" theory cannot extend the scope of consent. Neither Davenport nor any other officer told Ms. Church they had interest in any tablet or laptop computer, and no one requested or obtained specific permission to search those devices, despite obtaining a separate, specific consent form for Ms. Church's cellular telephone. (Tr. Evid. Hrg. 11:12–13:16). At no point in the roughly two-hour interview did the "integrated nature of the modern computer network" enter the discussion, (U.S. Supp. 14), and the officers did not otherwise demonstrate any interest in Church's non-cellular electronics. In other words, the record is completely devoid of any indication that the officers had "reason to believe" that Church's tablet and laptop computers were "connected with a crime," much less that they were connected to the alleged Forcible Sodomy. Thus, even accepting arguendo the United States' form-only interpretation of the scope of consent, those electronic devices remain outside of it.

Moreover, even assuming (counter-factually) that the record had such evidence, it remains further unexplained why police would be justified in searching for text messages in the "cache associated with the tablet's web browser," (U.S. Resp. 6), an area within the Defendant's tablet incapable of "backing up" an

SMS text message. Therefore, even if the Court were to ignore the lack of evidence in the record and embrace the United States's post-hoc justifications based on modern electronics, the search would remain illegal.[6]

For the reasons set forth above, the Court affirms the earlier determination that the warrant issued on November 4, 2015 was invalid, and further holds that the seizure and search of Church's tablet and laptop computers exceeded the scope of consent given by Ms. Church. Therefore, the seizure and search of those devices was illegal, and the only remaining question is the appropriate remedy for the constitutional violation. For the reasons set out below, the Court finds that the exclusionary rule must be applied.

## B. Suppression

The exclusionary rule is not an appropriate remedy for every Fourth Amendment violation, see United States v. Calandra,

---

[6] Because the Court holds that the seizure of the computers already exceeded the scope of consent, it need not decide this issue. For the same reason, the Court need not decide whether a general consent to seize materials within a residence related to crime would include an authorization to search the contents of electronic devices found therein. Finally, the Court also need not decide how it alters the constitutional analysis that, as a matter of objective fact, Detective Jones's testified that he "seized the electronics pursuant to the search warrant" and not pursuant to Ms. Church's consent. See Tr. Evid. Hrg. 38:22-39:20.

414 U.S. 338 (1974), but it is the appropriate remedy in this case. The police conduct in this case was, at best, contrary to the binding precedent of this Circuit, because it relied on the impermissible premise that evidence of child molestation alone establishes probable cause to search for child pornography. See Doyle, 650 F.3d at 472. As the Court has already held, a "reasonably well trained police officer" would have known that the search was illegal in such circumstances. See Church, WL 6123235 at *6 (ECF No. 32); see also United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002). Thus, the good-faith exception from Leon does not apply. Because no other exception to the exclusionary rule applies on these facts, suppression of the illegally recovered evidence is required.

Most plausibly viewed, the evidence in this case shows that Church's tablet and laptop computers were seized and searched "pursuant to the warrant," which in turn was issued contrary to the binding precedent of the Fourth Circuit. That warrant authorized a search for evidence of child pornography, despite the fact that no evidence of child pornography had been uncovered and the fact that MV1 had affirmatively denied being shown any pictures by the Defendant before or during the alleged assault. (Def. Mot. 2). Instead, the warrant clearly rested on the impermissible (and unstated) premise that evidence of child molestation establishes probable cause to search for child

pornography, notwithstanding that the Fourth Circuit has held precisely the opposite. Doyle, 650 F.3d at 472. The issuance and execution of a warrant under such circumstances is at best grossly negligent. See Davis, 564 U.S. at 238.

Moreover, contrary to the United States' argument in its supplemental briefing, Doyle is not ambiguous in its reasoning. (U.S. Supp. II. 3). It directly condemned the exact logic used by the police and magistrate in this case, and quoted approvingly cases from other Courts of Appeals that had held the same. 650 F.3d at 472. And, even if some ambiguity existed, it was certainly no more ambiguity that the Fourth Circuit recently ignored in United States v. Hill, 776 F.3d 243, 250 (4th Cir. 2015), where it declined to adopt a good-faith exception where the precedent governing the officer's conduct was conflicting. Thus, and for the additional reasons already set forth in the Court's earlier opinion on the matter, the Court denies the United States' request for reconsideration of its earlier decision in this case. (U.S. Sec. Suppl. 13-17). The Leon exception does not apply.

Because the conduct here was deliberate and contrary to binding precedent, the deterrent value of suppression is sufficiently high to warrant its heavy toll. The fact that the search also exceeded the scope of consent does not change the analysis, both because the underlying test for consent overlaps

24

with any good-faith inquiry and because the officers did not
rely on consent for the seizure and search in question.

The test for consent is one of "objective reasonableness."
Jimeno, 500 U.S. at 251. Thus, in determining that the seizure
and search of Church's tablet and laptop computers exceeded the
scope of consent, the Court necessarily determines that the
officers' actions, to the extent they actually relied on
consent, were "objectively unreasonable." As Church points out,
there is little, if any, room between this determination and the
good-faith assessment under Herring and Davis, and the Court is
aware of no precedent indicating otherwise. (Def. Supp. Resp. 3-
4). Thus, even if the officers in this case acted under the
auspices of consent, no exception to the exclusionary rule
extends to their conduct.

Moreover, the record here indicates that, as a matter of
fact, the officers did not act on consent; instead, the
electronics in question were seized "pursuant to the warrant."
(Tr. Evid. Hrg. 38:22-39:20). The testimony of Jones was
unequivocal on this point. Id. Although the subjective intent of
officers is typically irrelevant in Fourth Amendment analysis,
that admission at the very least plays a role in the inquiry
respecting whether suppression is appropriate. In particular, it
makes the suggestion that the officers relied on consent "in

25

good faith" incomprehensible, because the testimony indicated that they did not rely upon it at all.

Because no exception to the exclusionary rule applies, and because the officers' conduct was sufficiently deliberate and negligent to justify the cost of suppression, the Court holds that the exclusionary rule must be applied. All evidence obtained from the illegal seizure and search of Church's tablet and laptop computers will therefore be suppressed.

Moreover, under binding Supreme Court precedent, the exclusionary rule extends beyond the evidence actually discovered in the illegal search, and includes all evidence later discovered that is derivative of the illegality, *i.e.* that is "fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 341 (1939). In this case, the derivative evidence in question is the evidence discovered pursuant to the second warrant, which authorized the search of Church's Google account. (Def. Mot. 1, n.1).

Although there are several exceptions to the "fruit of the poisonous tree" doctrine, the United States has not argued that any exception applies. Consequently, the evidence obtained under the second warrant must also be suppressed, because that warrant was issued soley based on evidence uncovered in the initial, illegal search. The Court will therefore order suppression of all evidence obtained in the illegal seizure and search of the

26

Defendant's tablet and laptop computers, as well as all evidence recovered under the authority of the second warrant.

## CONCLUSION

For the reasons set forth above, Church's MOTION TO SUPPRESS EVIDENCE (ECF No. 17) will be granted, and the United States' MOTION TO RECONSIDER (ECF No. 37) will be denied.


It is so ORDERED.


                                        /s/        REP

                              Robert E. Payne
                              Senior United States District Judge


Richmond, Virginia
Date:   January **20** , 2017